IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**M&W FARMS, et al.**     **PLAINTIFFS**

**v.**     **CIVIL ACTION NO. 3:23-CV-53-MPM-RP**

**UMB BANK, N.A. and HORNE LLP**     **DEFENDANTS**

ORDER

This cause comes before the court on the motion of plaintiffs M&W Farms *et al* to remand this case to the Circuit Court of Tallahatchie County. Defendants UMB Bank, N.A. ("the Bank") and Horne, LLP ("Horne") have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is a fraud and negligence action arising out of what plaintiffs contend was a scheme to deprive them of the fruits of their hard work. The complaint in this case alleges that the Bank and Horne fraudulently and/or negligently deprived plaintiffs and other farmers of any payment for their 2021 crops. This court is not presently concerned with the merits of this complaint, however, since it must first determine whether it has jurisdiction over it. On March 3, 2023, defendant Horne removed this case on the basis of bankruptcy jurisdiction, 28 U.S.C. § 1334, citing the existence of a Chapter 11 bankruptcy petition filed by Express Grain Terminals ("EGT"). EGT is not a party to this lawsuit, but, in removing this case, Horne alleged that "in the event Horne is liable to Plaintiffs, the Debtor, EGT, will be liable to Horne based on its indemnity obligations in the engagement letters and on principles of common law indemnity."

1

[Removal petition at 7]. In so alleging, Horne insists that it merely served as EGT's accountant in this case and that any active negligence or fraud is attributable to EGT, and not to itself.

Plaintiffs have now filed a motion to remand, in which they seek for this court to abstain from deciding this action pursuant to 28 U.S.C. § 1334(c)(2), which is the mandatory abstention provision under the bankruptcy jurisdiction statute, or in the alternative, pursuant to the discretionary abstention provision of 28 U.S.C. § 1334(c)(1). In considering plaintiffs' motion, this court notes at the outset that district courts in this state have frequently been skeptical of bankruptcy removals where the underlying state lawsuit is, as is the case here, a simple state law action which the state court is well poised to handle. *See, e.g. Smith v. Wal Mart Stores, Inc.,* 305 F. Supp. 2d 652, 657 (S.D. Miss. 2003); *Walton v. Tower Loan of Miss.,* 338 F. Supp. 2d 691, 698 (N.D. Miss. 2004). This court has found that, in such cases, there is little harm - and often greater efficiency - in remanding the case and allowing the state court to litigate the underlying action to completion, at which time any recovery can be dealt with by the bankruptcy court as an asset of the bankruptcy estate. Indeed, that has been this court's default approach in ruling upon bankruptcy removals for many years, and it sees no reason to deviate from that approach here.

This court does acknowledge that the initial grant of bankruptcy jurisdiction in 28 U.S.C. § 1334 is very broad, listing four types of cases over which the federal court has bankruptcy jurisdiction, as follows:

      1. "cases under title 11",
      2. "proceedings arising under title 11",
      3. proceedings "arising in" a case under title 11, and
      4. proceedings "related to" a case under title 11.

The fourth category, dealing with "related to" jurisdiction, is the one most commonly found applicable in bankruptcy removal cases. The Fifth Circuit has adopted a very broad definition of

2

"related to" jurisdiction, namely "whether the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Matter of Wood,* 825 F.2d 90, 93 (5th Cir. 1987).

Even assuming for the sake of argument that any right of indemnity by Horne against EGT is sufficient to give rise to "related to" bankruptcy jurisdiction in this case, this court concludes, for the reasons discussed below, that such a right is insufficient to render this action a "core" bankruptcy proceeding. This is significant, since the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) require this court to abstain in cases where:

> 1. A motion has been timely filed requesting abstention.
> 2. The cause of action is essentially one that is premised on state law.
> 3. The proceeding is non-core or related to the bankruptcy case.
> 4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.
> 5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*Blakeley v. United Cable System,* 105 F. Supp. 2d 574, 583 n.9 (S.D. Miss. 2001) (citing 28 U.S.C. § 1334(c)(2). Thus, in cases where a timely motion for abstention has been filed, the law gives this court no choice but to abstain from hearing non-core cases premised on state law which could not have been commenced in federal court absent the existence of the bankruptcy case, so long as the case can be timely adjudicated in state court.

In its brief, Horne argues that it was improperly joined in this action and that this case could accordingly could have been commenced in federal court even absent the existence of the bankruptcy case. [Brief at 15-16]. This court disagrees, however, based primarily upon the Fifth Circuit's 2004 decision in *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004). A majority of the *en banc* Fifth Circuit in *Smallwood* observed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has

3

>stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.... Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity.

*Smallwood*, 385 F.3d at 573. It is accordingly plain, in light of *Smallwood*, that the improper/fraudulent joinder standard is far more deferential to a plaintiff's allegations than had commonly been assumed prior to that decision. Considered in the context of the lenient *Smallwood* standard, this court concludes that defendants have failed to demonstrate that no reasonable possibility of recovery exists against the non-diverse defendant Horne. In so stating, this court notes that, in their reply brief, plaintiffs provide an extensive description of their allegations against Horne, [reply brief at 7-11] and, while this court makes no finding regarding whether they will ultimately be able to recover on these claims against it, it concludes that they are sufficient to meet the lenient *Smallwood* standard.

This court therefore concludes that this case could not have been commenced in federal court absent bankruptcy jurisdiction, and it now addresses defendants' argument that it should be considered a "core" bankruptcy proceeding. In doing so, this court notes that the terms "core proceeding" and "non-core proceeding" are terms of art which have their origin in federal bankruptcy statutes. The federal statutes which give rise to bankruptcy jurisdiction were modified by Congress in response to the U.S. Supreme Court's 1982 decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). In *Marathon*, the Supreme Court held that Congress had overstepped its Constitutional limits by assigning overly broad jurisdiction to non-Article III bankruptcy judges in the 1978 Bankruptcy Code. Following *Marathon*, it became a matter of urgency for Congress to statutorily re-define the jurisdictional parameters of the bankruptcy courts. Congress elected to

accomplish this by enacting 28 U.S.C. § 157, which creates a statutory distinction between so-called "core" and "non-core proceedings," and by restricting the power of bankruptcy courts to adjudicate the latter.

In the 2009 decision of *In re Morrison*, 555 F.3d 473, 479 (5th Cir. 2009), the Fifth Circuit wrote that "[c]ore proceedings ... are those that invoke a substantive right provided by title 11 or could arise only in the context of a bankruptcy case." *Id.* at 479. Such is clearly not the case with the instant lawsuit, which is a simple fraud and negligence action based on state law. This lawsuit does not invoke "a substantive right provided by title 11" nor could it only arise in the "context of a bankruptcy case." This court accordingly concludes that this case is not a core proceeding, and this conclusion is ultimately dispositive of the mandatory abstention issues in this case. In so stating, this court reiterates that, under § 1334(c)(2), the law gives it no choice but to abstain from hearing non-core cases premised on state law which could not have been commenced in federal court absent the existence of the bankruptcy case, so long as the case can be timely adjudicated in state court.

This court has no reason to suspect that this case could not be timely adjudicated in state court, and it takes this opportunity to reiterate its view that "the process of removing state law claims based on a plaintiff's prior bankruptcy filing often (if not usually) serves to create more delays than it prevents." *Walton*, 338 F. Supp. 2d at 698. Indeed, this court frankly suspects that creating such delays is very often the point in bankruptcy removals. In this vein, this court notes that it has previously expressed its skepticism of most bankruptcy removals, writing in a 2008 decision that:

> It should also be noted that, particularly in recent years, the general practice among Mississippi district courts has been to abstain from hearing state law actions in which the sole asserted basis for exercising bankruptcy jurisdiction has been the bankruptcy filing of one or more of the parties. While the mere presence of bankruptcy plaintiffs or

5

> defendants is generally sufficient to give rise to "related to" bankruptcy jurisdiction, district courts throughout this state have recognized that the process of removing cases solely on the basis of the presence of bankruptcy parties raises a number of problematic issues. District courts have recognized that, in the vast majority of cases involving bankruptcy parties, the issues before the court merely require the valuation of state law claims based on state law and that state courts are in a much better position to perform this function than federal courts, which have less expertise in these state law areas and which have no shortage of cases on their own dockets....

*Shoemaker v. Batesville Hosp. Mgmt., Inc.,* 2008 WL 294551, at *2 (N.D. Miss. Jan. 31, 2008).

This court wrote these words in 2008, and, in preparing this order, it conducted a Westlaw search of Mississippi district court opinions which mention "1334(c)," as any bankruptcy removal order presumably would. The results were striking, revealing that, of the ninety-eight orders listed by Westlaw as mentioning this section, the most recent rulings on the merits of bankruptcy abstention issues were in 2017 and 2016. It should further be noted that the district courts in each of those cases abstained under 1334(c). *See VT Halter Marine, Inc. v. Emas Chiyoda Subsea, Inc.,* 2017 WL 2058225, at *1 (S.D. Miss. May 12, 2017); *Henderson v. PHC-Cleveland,* 209 F. Supp. 3d 890, 894 (N.D. Miss. 2016). This court further observes that the bankruptcy remand orders listed by Westlaw are heavily centered around the 2002-2008 years, which suggests that bankruptcy removals themselves were something of a passing "fad" which arose largely during the pre-Tort Reform era in Mississippi, when defendants desperately employed any means at their disposal to reach the friendlier waters of federal court. Once again, this court observed in its 2008 decision in *Shoemaker* that "in recent years, the general practice among Mississippi district courts has been to abstain" from hearing cases removed on the basis of bankruptcy jurisdiction, and this fact likely explains the increasing scarcity of bankruptcy removals in subsequent years.

While there are, no doubt, still Mississippi defendants who would rather defend themselves against civil lawsuits in federal court, most seem to have "taken the hint" from the

6

repeated rejection of bankruptcy removals by federal district judges in this state and given up on this dubious removal mechanism. This court finds this trend to be commendable, since the practice of asserting federal jurisdiction over simple state law tort claims based merely on the existence of a party involved in bankruptcy proceedings never made a great deal of sense to it. Indeed, as this court wrote in *Walton*:

> [T]he purpose of the present lawsuit is simply to place a value on the asset (i.e. plaintiffs' cause of action) that defendants allege to be an asset of plaintiffs' bankruptcy estate, and this valuation may be performed equally well in state court. The court sees little, if any, practical benefit in retaining jurisdiction over this case when the bankruptcy court and the bankruptcy trustee may protect the interests of plaintiffs' creditors, regardless of whether this lawsuit is tried in state or federal court. Although plaintiffs' bankruptcy creditors do have legitimate interests in the disposition of this case (assuming that the lawsuit is deemed to be an asset of the bankruptcy estate), the intervention of this court is not required to protect those interests.

*Id.* at 698. In this case, bankruptcy jurisdiction is asserted based on the bankruptcy filings of EGT, which is not even a party to this action, thus (arguably) making the assertion of bankruptcy jurisdiction even more tenuous here. This court accordingly concludes that mandatory abstention is applicable in this case and that it is due to be remanded on this basis. In light of this conclusion, it is unnecessary for this court to address plaintiffs' motion seeking discretionary abstention, although it fully agrees with the arguments set forth in their brief that such abstention would be warranted, if mandatory abstention were somehow inapplicable.

In light of the foregoing, it is ordered that plaintiffs' motion to remand [9-1] this case to the Chancery Court of Tallahatchie County on the basis of mandatory abstention is granted.

This, the __5__ day of October, 2023.

_____
U.S. DISTRICT COURT